JEREMIAH MELLEN & another *vs.* WESTERN RAILROAD CORPORATION.

A railroad corporation, building and maintaining, as part of their road, a bridge across a river, in such manner as to obstruct the passage of the water, are liable to an action of tort by the owner of land thereby flowed, unless they show that they have taken reasonable precautions to prevent unnecessary damage to his land.

ACTION OF TORT. The declaration alleged that the defendants in 1839, and for fourteen years since, maliciously intending to deprive the plaintiffs of the use and profits of fifty acres of their meadow land, by means of a bridge, abutments and embankments, constructed and maintained by the defendants in and across the Quaboag River, in the town of Brookfield, and by means of large quantities of stone, earth and gravel thrown into the river, obstructed the free flow of the waters of the river, and caused it to overflow and injure the plaintiffs' meadow.

Trial in the court of common pleas, before *Byington*, J., who signed the following bill of exceptions : " The case having been opened, the defendants contended that, if the plaintiffs had sustained any damage by means of the causes alleged, their remedy

should have been sought under the provisions of *c.* 39, § 56, of the revised statutes, and that an action at common law would not stand. The presiding judge ruled otherwise; and that the court had jurisdiction, and the jury returned a verdict for the plaintiffs. To this ruling the defendants except."

*A. Phelps, Jr.* for the defendants.

*C. Allen,* for the plaintiffs.

BIGELOW, J.* The premises of the plaintiffs, which they allege in their declaration to have been overflowed and injured, are situated near the railroad of the defendants, but outside of and beyond the five rods which they are authorized to take in the construction of their road. To justify the acts alleged in the declaration, and defeat the present action, the defendants relied on the authority and power granted to them by their charter, *St.* 1833, *c.* 116, and the general statutes of the Commonwealth, regulating the mode of appropriating private property to the public use of constructing railroads over or near the same. Rev. Sts. *c.* 39, §§ 54–64. To maintain this defence, they were bound to show that all due and reasonable precautions were taken in the construction and maintenance of their road, and that nothing was done wantonly, negligently or carelessly, so as to cause unnecessary damage to the property of the plaintiffs, situated without the line of their located limits. Upon proof of such facts, it is perfectly clear and well settled that the remedy of the plaintiffs, for any injury to their property by the defendants, is not by an action at law against the corporation, but by an application to the county commissioners for an assessment of damages, according to the provisions of the statute applicable to such cases. It is the common case where a statute has conferred a right and established a corresponding remedy. The party injured must seek his redress in the particular mode provided by law. *Stevens* v. *Middlesex Canal,* 12 Mass. 466. *Dodge* v. *County Commissioners,* 3 Met. 380. *Ashby* v. *Eastern Railroad,* 5 Met. 368 *Parker* v. *Boston & Maine Railroad,* 3 Cush. 113.

But the remedy thus given by statute is confined to cases

---

* THOMAS, J. did not sit in this case.

where the authority and power conferred by the legislature are exercised within their proper limits, and in the due execution of the work which an individual or corporation is allowed to construct, by the terms of the grant or charter under which the acts occasioning injury to private property are committed. A corporation, to whom the right of eminent domain has been delegated by the sovereign power, cannot, in the exercise of this right over private property situated beyond the limits of that which they are authorized to take and appropriate as a part of their franchise, act recklessly and wantonly, or do any acts which are not necessary and proper to carry out and perfect the work which they are authorized to construct. Undoubtedly, great latitude of discretion is to be allowed to those who are intrusted by law with the erection and maintenance of great public works, in the location and mode of construction which they may adopt to effect the objects and purposes to be accomplished under their authority. So long as they act in good faith, within the scope of the powers granted to them, without being guilty of negligence, carelessness or wanton disregard of the rights of individuals, they will be protected from all liability, except in the mode and by the process fixed by the statute under which they act. These principles have been fully illustrated and applied in a case quite analogous to the one at bar. *Rowe* v. *Granite Bridge*, 21 Pick. 348. See also *Dodge* v. *County Commissioners*, 3 Met. 383.

The refusal of the court, in the present case, to adopt the position assumed by the defendants was in strict conformity with this well settled doctrine. The defendants, on the opening of the plaintiff's case, upon the mere allegations in the declaration, without hearing any statement of facts or any evidence in their support from the plaintiffs, so far as we can learn from the exceptions, contended that this action could not be maintained. In other words, the defendants assumed that, by their charter, they had the absolute right and authority to obstruct and hinder the passage of water in the river to the injury of the plaintiff's property, without any restriction or limitation upon their powers in this respect, or any reference to the mode in

which they had been exercised; and that the only remedy of the plaintiffs for any injury was by an application for an assessment of their damages under Rev. Sts. *c.* 39, §§ 56, 57. This was equivalent to asserting a right on the part of the defendants to do any act under their charter, without regard to their own powers or the rights of others. Such a position was clearly untenable. The right and authority of the defendants under their charter were carefully regulated and limited. They had a right to construct a bridge, with embankments and abutments, across the river, at such place and in such manner as they might find convenient for the construction of their railroad across the stream. But this right was to be exercised in a reasonable manner, without negligence or carelessness, and with all due and fit precautions, consistent with the proper execution of the work which they were empowered by law to construct and maintain. The plaintiffs alleged in their declaration the malicious obstruction of the river by the defendants. It was for the defendants to show that the acts thus charged were strictly within the powers conferred by their charter. But until that was proved, the court were right in ruling that the plaintiffs might maintain their action.                    *Exceptions overruled.*